UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ONE PLACE CONDOMINIUM LLC, | ) | |
| THE SOUTH LOOP SHOPS LLC, | ) | |
| SOUTHBLOCK DEVELOPMENT LLC, | ) | Case No. 1:11-cv-02520 |
| C & K PARTNERSHIP, and | ) | |
| SOUTHBLOCK MANAGEMENT, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | Honorable Sheila M. Finnegan |
| | ) | |
| vs. | ) | |
| | ) | |
| TRAVELERS PROPERTY CASUALTY | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56(a) and Local Rule 56.1, Plaintiffs, One Place Condominium LLC, The South Loop Shops LLC, Southblock Development LLC, C & K Partnership, and Southblock Management, Inc. (collectively "Plaintiffs" or "One Place"), submits the following Memorandum of Law in Support of their Motion for Partial Summary Judgment.

## I. INTRODUCTION[1]

This is a breach of contract and insurance coverage dispute arising from an "all risk" Builders' Risk Policy Travelers issued to its insured Plaintiffs, the owners and developers of a

---

[1] A detailed statement of all material facts, including specific references to supporting materials, is contained in the concurrently filed Plaintiffs' Statement of Material Facts.

mixed commercial use building in Chicago located at 1 E. 8th Street. To provide protection for project risks during construction, Plaintiffs purchased a robust "all risk" policy containing $33 million of basic limits.

In addition to the basic limits, the policy also lists specific types of coverage with specified limits. One of these coverages set forth in the declarations of the policy is referred to as "soft costs" and has limits of $3.3 million. Policy p. 1 of form CM TO 01 07 86 (hereinafter the Declarations Page). It is Plaintiffs' position that the full $3.3 million of "soft costs" coverage is available to pay for the soft costs portion of the loss. *See* Plaintiffs' Complaint [Doc. 1], at ¶¶ 6-19. Travelers, on the other hand, argues that the "earth movement" definition in the policy, limits Plaintiffs' recovery for the loss to no more than $2.5 million. In other words, it is Travelers' position that because of the "earth movement" definition, under no circumstances can Plaintiffs recover more than $2.5 million for the loss at issue. *See* Defendant's Seventh Affirmative Defense, at ¶¶ 2, 4.

Accordingly, Plaintiffs' Motion for Partial Summary Judgment seeks a declaration that even if the earth movement definition in the policy applies to the loss, (which Plaintiffs do not admit), it does not limit the $3.3 million in available coverage provided by the "soft costs" provision in the policy.

## II. STANDARDS OF LAW

### A. Standards for Summary Judgment

Summary judgment should be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Temme v. Bemis Co., Inc.*, 622 F.3d 730, 734 (7th Cir. 2010). Only those facts which affect the outcome of the case under the governing law is a material fact. *Stokes v. Board of Educ. of the City of Chicago*, 599 F.3d 617,

619 (7th Cir. 2010). Further, a factual dispute is genuine only if there is sufficient evidence that a reasonable jury could find for the non-moving party. *Id*.

### B. Interpretation and Construction of Insurance Contracts

In Illinois, the construction of an insurance policy and its provisions is a question of law. *Twenhafel v. State Auto Prop. & Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. 2009); *Great Am. Ins. Co. v. Helwig,* 419 F. Supp. 2d 1017, 1021 (N.D. Ill. 2006). In construing an insurance policy, the court must determine the intent of the parties to the contract. *Twenhafel*, 581 F. 3d at 628; *BASF AG v. Great Am. Assur. Co.,* 522 F.3d 813, 819 (7th Cir. 2008). To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole with due regard to the risk undertaken, the subject matter that is insured, and the purpose of the entire contract. *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 75 (Ill. App. Ct. 1997).

Terms in an insurance contract are to be interpreted in an ordinary or popular sense as would a person of average intelligence and experience. *Id.* If the meaning of the policy is clear and unambiguous, then it must be applied as written. *Id,* 687 N.E.2d at 75*; see also, e.g., Valley Forge Ins. Co. v. Swiderski Electronics, Inc.,* 860 N.E.2d 307, 314 (Ill. 2006). If, however, the words in the policy are susceptible to more than one reasonable interpretation, then they are ambiguous and will be construed liberally in favor of the insured and strictly against the insurer who drafted the policy. *See, e.g., Valley Forge Ins. Co.*, 860 N.E.2d at 314-15.

Provisions which grant insurance coverage are broadly construed so as to afford the greatest possible protection to the insured, while provisions which limit or exclude coverage are interpreted narrowly against the insurer so that the insured will not be deprived of the benefit of the insurance for which it paid. *See Nat'l Union Fire Ins. Co. v. Glenview Park Dist.,* 632 N.E.2d 1039, 1042 (Ill. 1994). Moreover, the insurer bears the burden of proof regarding

3

exclusions from coverage. *Wallis v. Country Mut. Ins. Co.,* 723 N.E.2d 376, 380 (Ill.App.Ct. 2000); *Mattis v. State Farm Fire & Cas. Co.*, 454 N.E.2d 1156, 1162 (Ill.App.Ct. 1987); *Harbor House Condo. Ass'n v. Massachusetts Bay Ins. Co.*, 703 F. Supp. 1313, 1316-17 (N.D. Ill. 1988).

### III.  ARGUMENT

The Policy language clearly provides that the soft cost coverage is not affected by the language regarding earth movement. A simple reading of the Policy language instructs the parties to the insurance contract that the focus in these provisions is on different parts of the event that triggered coverage. In the alternative only, to the extent the Court finds that there are two reasonable interpretations regarding these provisions, then the Policy is ambiguous in accord with Illinois law must be construed in favor of Plaintiffs in any event.

#### A.  The Policy Language Clearly Provides That The Soft Cost Coverage Is Not Effected By The Earth Movement Provision.

Plaintiffs purchased broad coverage as they bought an "all risk" policy with robust limits of $33 million. "All risk" insurance policies protect the insured in cases where the loss or damage to property is difficult or impossible to explain. The insured's burden under an all risk policy is limited. The insured need only show that a fortuitous loss occurred and that there was a loss or damage to covered property. This insured need not prove the cause of the loss or damage. Thus, the benefit of paying for an all risk policy. The burden then shifts to the insurer to prove an express exclusion or limitation to coverage applies, as well as the dollar amount that should be excluded from coverage. *McGrath v. American Family Mutual Ins. Co.,* 2008 WL 4531373 (N.D. Ill. 2008); *Buscher v. Economy Premier Assurance Co.*, 2006 WL 268781 (D. Minn. 2006*); Pillsbury Co. v. Underwriters at Lloyd's, London,* 705 F. Supp. 1396, 1399 (Dist. Minn. 1989).

In any event, in the present action, Travelers, after one year of denying the claim, finally admitted coverage but paid Plaintiffs only $1,345,549.60. *See* Ex. B. Accordingly, as Travelers admitted coverage, the burden now shifts to Travelers to prove that there is an exclusion or limitation that applies. One of Travelers' main arguments is that the "earth movement definition" limits any coverage it owes for the loss to $2.5 million. While Plaintiffs do not admit that the earth movement definition is applicable, even if it was, it does not affect the soft cost coverage provided under the policy which provides $3.3 million of coverage. A review of the policy language proves Plaintiffs' point. The Policy provides, in part:

>   **A.   COVERAGE**
>
>   We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.
>
>   **1. Covered Property**
>
>   Covered Property, as used in this Coverage Part, means "Builders' Risk".
>
>   **2. Covered Causes of Loss**
>
>   Covered Causes of Loss means RISKS OF DIRECT PHYSICAL "LOSS" except those causes of "loss" listed in the Exclusions.
>
>   **3. Soft Costs and Special Time Element**
>
>   a.   "Soft Costs"
>
>   "We will pay your 'soft costs' during the 'period of delay in completion.' Such <u>'soft costs' must result from 'loss' to Covered Property</u> from any of the Covered Causes of Loss which delays the completion of the 'project' beyond the 'planned completion date.' Emphasis added. Policy p. 1 of form CM T1 43 08 96.

The "soft costs" provision above contains a number of words that are defined in the policy as follows:

> "Soft costs" are defined as:
>
> "your actual and necessary business costs in excess of your budgeted amount for the 'project' consisting only of the type shown in the Declarations." Policy p. 16 of form CM T1 43 08 96.
>
> "Loss" is defined as: "accidental loss or damage." Policy p. 15 of form CM T1 43 08 96.

The Declaration page lists the type of costs that qualify as "soft costs" as:

- Interest on money borrowed to finance construction;
- Advertising expenses;
- Realty taxes and other assessments;
- Costs resulting from the renegotiation of your leases(s) or construction loans;
- Rental value. See, Policy Declarations Page.

The "earth movement" definition, which Travelers argues is an overall limitation of coverage for this matter, provides as follows:

> "Earth Movement limit of Insurance" means the most we will pay <u>for "loss"</u> in any one occurrence caused directly or indirectly by "earth movement", regardless of any other cause or event that contributes concurrently or in any sequence to the loss". (Emphasis added) Policy p. 14 of form CM T1 43 08 96.

A simple reading of the soft cost language and the earth movement language shows that their respective focus is on two different points in the life of the event. Earth movement focuses on amounts paid for the loss as it provides that the "earth movement limit of insurance means the most we will pay <u>for</u> loss…." (Emphasis added) Policy p. 14 of form CM T1 43 08 96. In

6

contrast, soft costs specifically focus on the damages that result <u>from</u> the loss as it provides that these costs "must result <u>from</u> loss…." (Emphasis added) Policy p. 1 of form CM T1 43 08 96. In other words, once the loss has occurred, soft costs are coverage benefits owed for what results from the loss ("loss" is defined by the policy as "accidental loss or damage"). According to the policy, "soft costs" "**must result from a loss** to Covered Property …." According to the earth movement definition, the "Earth Movement Limit of Insurance" is the "most [Travelers] will **pay for "loss"** in any one occurrence caused directly or indirectly by 'earth movement.'" The soft cost has nothing to do with what contributes in any sequence to the loss, concurrent or otherwise. Instead, after the loss and resulting from the loss, is when "soft costs" come in to play.

The policy sets forth the mechanisms of coverage. The language of the policy would make no sense read in the way Travelers insists, as such a reading abrogates significant coverages provided by the policy and paid for by Plaintiffs. Clearly, it makes little sense that a Builders' Risk Policy, purchased for the specific purpose of insuring against risks that arise during the construction of a large mixed commercial use building, would mean to limit all coverage to $2.5 million, and it makes even less sense that the policy was intended to limit the effects that are suffered from a loss and are specifically embodied by the concept of soft costs, to be limited to that same $2.5 million. Thus, even if Travelers is correct and the earth movement provision limits coverage for the loss (which Plaintiffs deny and do not admit), it clearly has no effect on the soft cost coverage provision which speaks to damages in the form of soft costs that "must result from the loss."

Plaintiffs anticipate that Travelers will urge this court to interpret the earth movement language *broadly* to encompass the soft costs provisions and to somehow control every other provision in the policy. However, it is a cardinal rule of insurance contract interpretation and

7

construction that provisions which grant coverage are interpreted broadly so as to afford the greatest possible protection to the insured, *while provisions which limit or exclude coverage are interpreted narrowly against the insurer. Koloms,* 687 N.E.2d at 75. Under this well-settled cannon of insurance contract interpretation and construction, even if a particular limiting or exclusionary phrase or term is capable of being interpreted in the manner sought by the insurer, where another interpretation favorable to the insured reasonably can be made that interpretation must be applied. Simply put, it would be impermissible for this court to employ the *broadest* possible interpretation of the earth movement language, even setting aside the fact that it makes no sense to do so in this matter.

It also would be impermissible for this Court to "redraft insurance policy language to fit the preferred interpretation of the drafter, particularly after the insurable event has occurred and a claim is pending." *Lyon* v. *Lumbermens Mutual Casualty Co.,* 566 N.E.2d 388, 392 (Ill.App.Ct. 1990). Thus, if Travelers, as the drafter of the Policy, wanted the earth movement language to take precedent over all other language in the policy, then it should have drafted it that way. Having made no attempt to do so, and in fact for some inexplicable reason Travelers stuck the earth movement language in the "definition" section of the policy which does not begin until page 13, Travelers is now bound by a narrow interpretation: that the earth movement language does not, at the very least, consume the soft costs coverage limits.[2] Such a reading is not only consistent with the reasonable expectations of the average purchaser of insurance, but it also effectuates the predominate purpose of insurance, which is to indemnify the insured.

### B. In The Alternative, The Policy Language Is Ambiguous And Must Be Construed In Favor Of The Insureds.

---

[2] Plaintiff's reserve the right to argue that the earth movement limit does not cap the limits available for the loss as a whole.

At the very least, the Policy language regarding the matter at issue is ambiguous. As previously explained, if a provision in an insurance policy is subject to more than one reasonable interpretation, then it is ambiguous and must be construed against the insurer and in favor of the insured. *See Outboard Marine Corp. v. Liberty Mutual Ins. Co.,* 607 N.E.2d 1204, 1218 (Ill. 1992) (finding the term "sudden" to be subject to two reasonable interpretations and, therefore ambiguous); *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.,* 578 N.E.2d 926, 933 (Ill. 1991) (finding that the phrase "the atmosphere" to be subject to two reasonable interpretations and, therefore, ambiguous). The reason for this rule, which is one of the most familiar holdings in insurance case law, is two-fold: 1) the intent of an insured in purchasing an insurance policy is to obtain coverage and, therefore, any ambiguity jeopardizing such coverage should be construed consistent with the insured's intent; and (2) the insurer is the drafter of the policy and could have drafted the ambiguous provision clearly and specifically. *See Elson* v. *State Farm Fire and Casualty Co.,* 691 N.E.2d 807, 811-12 (Ill.App.Ct. 1998). With respect to the language at issue, it is clear that the words "for loss" in the earth movement definitions and "from loss" in the soft cost language clearly supports Plaintiffs' position. In any case, Travelers cannot sustain its burden of demonstrating that its interpretation is the only reasonable interpretation.

Consequently, in accord with the previously discussed rules of insurance contract interpretation and construction, rules designed to protect the insured's reasonable expectations of coverage in a situation in which the insurer controls the language of the policy, this court is required to construe the language strictly against Travelers and in favor of coverage for Plaintiffs. *See Employers Insurance Co. of Wausau v. Ehlco Liquidating Trust,* 708 N.E.2d 1122, 1130 (Ill. 1999) ("Where competing reasonable interpretations of a policy exist, a court is

not permitted to choose which interpretation it will follow. Rather, in such circumstances, the court must construe the policy in favor of the insured and against the insurer that drafted the policy.") In other words, Plaintiffs' reasonable interpretation of the provisions must prevail.

## IV. CONCLUSION

A simple reading of the Policy indicates that partial summary judgment should be granted in favor of Plaintiffs. There is no question that the earth movement language is not even focused on the same part of the event as is the soft cost provision. This makes sense in light of the focus of the soft costs provision on costs that "result from the loss." Accordingly, Plaintiffs respectfully request that this Court grant partial summary judgment in their favor and against Travelers finding and declaring that the soft costs coverage and limits of $3.3 million as provided for in the Policy are not limited by the earth movement language or limits.

Dated: October 7, 2011

                Respectfully submitted,

                One Place Condominium LLC, The South Loop Shops LLC, Southblock Development LLC, C & K Partnership, and Southblock Management, Inc.

        By:   /s/Katherine Smith Dedrick
                Katherine Smith Dedrick, Esq,
                Illinois Bar No. 6185314
                kdedrick@childresslawyers.com
                Coleman J. Braun, Esq.
                Illinois Bar No. 6295961
                cbraun@childresslawyers.com
                Childress Duffy, Ltd.
                500 North Dearborn Street
                Suite 1200
                Chicago, Illinois 60654
                Tel: (312) 494-0200
                Fax: (312) 494-0202
                Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via CM/ECF and a copy was furnished via CM/ECF on this 7th day of October, 2011, to:

K. Clark Schirle
Cschirle@butlerpappas.com
Butler Pappas Weihmuller Katz Craig, LLP.
115 South LaSalle Street, Suite 3200
Chicago, Illinois 60603
Tel: (312) 456-0900
Fax: (312) 456-0909

                                                                             By:    /s/Katherine Smith Dedrick
                                                                                     Katherine Smith Dedrick, Esq,
                                                                                     Illinois Bar No. 6185314
                                                                                     kdedrick@childresslawyers.com
                                                                                     Coleman J. Braun, Esq.
                                                                                     Illinois Bar No. 6295961
                                                                                     cbraun@childresslawyers.com
                                                                                     Childress Duffy, Ltd.
                                                                                     500 North Dearborn Street
                                                                                     Suite 1200
                                                                                     Chicago, Illinois 60654
                                                                                     Tel: (312) 494-0200
                                                                                     Fax: (312) 494-0202
                                                                                     Attorneys for Plaintiff