IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ONE PLACE CONDOMINIUM, LLC, THE SOUTH LOOP SHOPS LLC, SOUTHBLOCK DEVELOPMENT LLC, C & K PARTNERSHIP, and SOUTHBLOCK MANAGEMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br><br> Defendant. | No. 11 C 2520 <br><br> Magistrate Judge Finnegan |

## MEMORANDUM OPINION AND ORDER

Plaintiffs One Place Condominium LLC, The South Loop Shops LLC, Southblock Development LLC, C & K Partnership, and Southblock Management, Inc. (collectively "Plaintiffs" or "One Place") have filed this diversity suit against Defendant Travelers Property Casualty Company of America seeking to recover amounts allegedly due under a commercial insurance policy. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiffs now seek partial summary judgment on the issue of coverage limits for "soft costs" resulting from "Earth Movement" loss. For the reasons set forth here, the motion is granted.

## BACKGROUND

One Place Condominium LLC, The South Loop Shops LLC, and Southblock Development LLC are Illinois limited liability companies with members who are all citizens of Illinois. (Doc. 28 ¶ 1; Doc. 15 at 1-2). C & K Partnership consists of two partners who are both citizens of Illinois, and Southblock Management, Inc. is an Illinois corporation with

its principal place of business in Chicago. (*Id.*). Plaintiffs are all owners, developers and managers of property located at 1 East 8th Street in Chicago (the "insured premises"). (Doc. 28 ¶ 2). Defendant insurance company is a Connecticut corporation with its principal place of business in Hartford.

  **A.**  **The Insurance Policy**

    **1.**  **"Builders' Risk"**: On January 12, 2007, Defendant issued Plaintiffs an insurance policy covering the insured premises in Chicago for the period from November 2, 2006 to November 2, 2007 (the "Policy"). (*Id.* ¶ 3). The Policy insures against "'loss' to Covered Property from any of the Covered Causes of Loss." (Policy, Doc. 1-1, at 14).[1] "Loss" is defined as "accidental loss or damage." (*Id.* at 28). "Covered Property" means "Builders' Risk," which is defined as "[p]roperty described in the Declarations under 'Builders' Risk' . . . consisting of: . . Buildings or structures [and] Property that will become a permanent part of the buildings or structures at the 'job site.'" (*Id.* at 26). Under "Builders' Risk" in the Declarations, the policy states that it covers "only the buildings and structures" described on that page, namely, "new construction of a three story fire resistive retail and condominium building located at 1 E. 8th Street, Chicago, IL 60605" (the "project"). (*Id.* at 7). "Covered Causes of Loss" means "RISKS OF DIRECT PHYSICAL 'LOSS' except those causes of 'loss' listed in the Exclusions." (*Id.* at 14).

    **2.**  **"Soft Costs":** After stating that Travelers will pay for "loss" to covered property for any of the covered causes of loss, the coverage section then states under the heading of "Soft Costs" that:

---

  [1]  For ease of reference, page numbers for the Policy are drawn from the CM/ECF docket entries at the top of the filed document.

2

> We will pay your "soft costs" during the period of delay in completion. Such soft costs must result from "loss" to Covered Property from any of the Covered Causes of Loss which delays the completion of the project beyond the "planned completion date."

(*Id.* at 14). "Soft costs" are defined as "your actual and necessary business costs in excess of your budgeted amount for the 'project' consisting only of [the] type shown in the Declarations." (*Id.* at 29). The Declarations page lists the following items as "soft costs":

- Interest on money borrowed to finance construction
- Advertising expenses
- Realty taxes and other assessments
- Costs resulting from the renegotiation of your lease(s) or construction loans

(*Id.* at 7).

        **3.** **"Limits of Insurance":** The Declarations page sets forth the applicable "Limits of Insurance" under the Policy. It contains a section describing the limits of insurance for "Builders' Risk," followed by a separate section with the limits of insurance for "'Soft Costs' and Special Time Element." (*Id.* at 7). The Policy describes "Limits of Insurance" this way:

> The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations. But in the event coverage for "loss" is provided under the Coverage Extensions or Additional Coverages, the Limits of Insurance stated within the specific Coverage Extension or Additional Coverage will apply as additional amounts of insurance, unless otherwise stated within the Coverage Extension or Additional Coverage.

(*Id.* at 22).

        The Declarations page states that the relevant Limits of Insurance for "Builders' Risk" include:

- "Basic Limit of Insurance"  $33,000,000
- "Earth Movement Limit of Insurance"  $2,500,000
- "Earth Movement Annual Aggregate Limit of Insurance"  $2,500,000

(*Id.* at 7). The "Basic Limit of Insurance" means "the most we will pay for 'loss' in any one occurrence unless a more specific Limit of Insurance for the applicable 'loss' is shown in the Declarations or elsewhere in the policy." (*Id.* at 26). "Earth Movement Limit of Insurance" means "the most we will pay for 'loss' in any one occurrence caused directly or indirectly by 'earth movement,' regardless of any other cause or event that contributes concurrently or in any sequence to the 'loss.'" (*Id.*). "Earth Movement Annual Aggregate Limit of Insurance" means "the most we will pay for all covered 'earth movement' occurrences in any one policy year." (*Id.*).[2]

Under the "'Soft Costs' and Special Time Element" section of the Declarations page, the Policy states, under "Limits of Insurance," that "[t]he most we will pay for your 'amount of loss' under 'Soft Costs' and Special Time Element is: $3,300,000." (*Id.*). "Amount of loss" is defined as "the sum of your actual 'soft costs' and 'rental value,' as covered by this policy." (*Id.* at 26).

    **4.** **Deductible**: As with the Limits of Insurance, the Declarations page separately describes the deductible for "Builders' Risk" and the deductible for "'Soft Costs' and Special Time Element." The deductible for Builders' Risk is $10,000 for the "Basic Deductible" and $50,000 for the "Earth Movement Deductible." (*Id.* at 8). The "'Soft Costs'

---

[2] "Earth movement" is defined as "any movement of the earth (other than 'sinkhole collapse'), including but not limited to: a. earthquake; b. landslide; c. earth sinking, rising or shifting; d. volcanic eruption, explosion or effusion." (Policy, at 27).

and Special Time Element Deductible" is 14 days. The Policy explains in Section D ("DEDUCTIBLE") how the deductibles are applied:

1. "Builders' Risk"

   We will not pay for "loss" in any one occurrence until the amount of the adjusted "loss" exceeds the applicable Deductible shown in the Declarations." We will then pay the amount of the adjusted "loss" in excess of the Deductible, up to the applicable Limit of Insurance.

2. Soft Costs and Special Time Element

   We will not pay the "amount of loss" until the applicable Deductible shown in the Declarations is exceeded. We will then pay for that part of the "amount of loss" incurred by you in excess of such deductible, up to the Limit of Insurance.

(*Id.* at 22).

### B. The Lawsuit

There is no dispute that Plaintiffs experienced a loss covered by the Policy while it was in effect. (Doc. 28 ¶ 4; Doc. 32 ¶ 4). The current disagreement relates to the type of loss suffered, the extent to which the Policy covers that loss, and the total insurance payments due to Plaintiffs. To date, Defendant has paid Plaintiffs $1,345,549.69, including $235,844.30 for soft costs. (Doc. 28-2, at 6). Plaintiffs insist that they are entitled to much more, and they filed the instant lawsuit in order to recover those additional amounts.

The parties are still working to complete discovery, but Plaintiffs filed a motion for partial summary judgment seeking resolution of the following legal question: assuming Plaintiffs' loss involves Earth Movement, are they eligible to recover at most $2.5 million per the Earth Movement Limit of Insurance, or can they also receive up to $3.3 million in additional funds for "soft costs" resulting from the Earth Movement? Plaintiffs want a

declaration that the $2.5 million limit for Earth Movement loss "does not limit the $3.3 million in available coverage provided by the 'soft costs' provision in the [P]olicy." (Doc. 29, at 2). Defendant insists that the Policy only requires the company to pay a combined total of $2.5 million for all Earth Movement losses and soft costs. As discussed below, the Court finds that the Policy is at best ambiguous as to the scope of available coverage under such circumstances, and therefore grants Plaintiffs' motion.

## DISCUSSION

**A. Standard of Review**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In viewing the facts presented on a motion for summary judgment, the court must construe the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear*, 528 F.3d at 512.

**B. Construction of Insurance Contracts**

It is undisputed that Illinois law governs this diversity case. "Under Illinois law, the interpretation of an insurance policy is a question of law that is properly decided by way of

summary judgment." *Twenhafel v. State Auto Prop. and Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. 2009) (quoting *BASF AG v. Great American Assurance Co.*, 522 F.3d 813, 818-19 (7th Cir. 2008)). In construing the language of an insurance policy, the Court's primary objective is "to ascertain and give effect to the intentions of the parties as expressed by the language of the policy." *Id*. *See also American States Ins. Co. v. Koloms*, 177 Ill.2d 473, 479, 687 N.E.2d 72, 75 (1997). This requires the Court to "construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Id.* (quoting *BASF*, 522 F.3d at 819).

If the terms of an insurance policy are clear and unambiguous, they must be applied as written and given their plain and ordinary meaning. *Id.*; *American States Ins. Co*, 177 Ill. 2d at 479, 687 N.E.2d at 75. If, however, the terms are ambiguous, they "will be strictly construed against the drafter." *Id.* (quoting *BASF*, 522 F.3d at 819). "[P]rovisions that limit or exclude coverage are to be construed liberally in favor of the insured and 'most strongly against the insurer.'" *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Glenview Park Dist.*, 158 Ill.2d 116, 122, 632 N.E.2d 1039, 1042 (1994). The insurer bears the burden of proving that a claim is excluded from coverage. *Deal v. Prudential Ins. Co. of America*, 263 F. Supp. 2d 1138, 1143 n.2 (N.D. Ill. 2003)).

**C. Analysis**

Plaintiffs seek a declaration that assuming the $2.5 million Earth Movement Limit of Insurance applies to the loss they suffered, they are still eligible to recover up to $3.3 million in additional monies for soft costs. Plaintiffs argue that the contract language unambiguously provides for this result, but assert in the alternative that the language is ambiguous and must be construed against Defendant.

In support of their stated contract interpretation, Plaintiffs contend that the soft costs and Earth Movement provisions focus on "two different points in the life of the event." (Doc. 29, at 6). Plaintiffs first note that the Definitions section of the policy provides that Earth Movement Limit of Insurance is the most Defendant will pay "for 'loss.'" (Policy, at 27). Plaintiffs then turn to the "Coverage" section of the policy, which states that Defendant will pay soft costs as long as they "result *from* a loss to Covered Property from any of the Covered Causes of Loss." (*Id.* at 14) (emphasis added). According to Plaintiffs, these provisions demonstrate that soft costs "are not a part of the loss" contemplated by the Earth Movement Limit of Insurance, but are instead additional expenses that have arisen subsequent to, and as a result of the loss. (Doc. 34, at 3). (*See also* Doc. 29, at 7) ("The soft cost has nothing to do with what contributes in any sequence to the loss, concurrent or otherwise. Instead, after the loss and resulting from the loss, is when 'soft costs' come into play."). Thus, Plaintiffs argue, Defendant must pay up to $2.5 million when an Earth Movement loss occurs, plus up to $3.3 million more for soft costs resulting from that Earth Movement loss.

Defendant disagrees, insisting that the Earth Movement Limit of Insurance covers all losses caused directly or indirectly by Earth Movement, including any soft costs. (Doc. 31, at 5). In Defendant's view, the description of soft costs as stated in the Coverage section of the policy serves a single function: to confirm that soft costs come into play only if a covered loss causes delay in completion of the entire project. (*Id.* at 7). The insurance limits set forth in the Declarations are entirely different, Defendant says, and they unambiguously limit coverage for Earth Movement loss to $2.5 million, inclusive of soft costs. (*Id.* at 7-8). In that regard, Defendant stresses that the "Limits of Insurance"

provision expressly states that the most the insurer will pay for a "loss" is the applicable limit of insurance shown in the Declarations, unless the "loss" falls within a specific Coverage Extension or Additional Coverage provision. Given that soft costs are not listed within those extensions or additions, Defendant argues, the Earth Movement Limit of Insurance applies and trumps any claim for soft costs above the $2.5 million amount. (*Id.* at 4, 6).

It is true that the Declarations page has a "Builders' Risk" section that limits coverage for "loss" stemming from Earth Movement to $2.5 million. That same page, however, has a separate "Soft Costs" section with its own "Limits of Insurance" stating that "[t]he most we will pay for your 'amount of loss' under 'Soft Costs' and Special Time Element is: $3,300,000." (Policy, at 7). Soft costs are also identified as a separate line item in discussing the scope of coverage under the Policy. (*Id.* at 14). In the Court's view, this separate treatment of soft costs undermines Defendant's assertion that they necessarily are meant to be included within the Builders' Risk limits of insurance. Instead, one could reasonably construe the Policy to mean that the amount recoverable for accidental loss or damage to the building and structures is limited to $33 million, unless that damage is caused by Earth Movement, in which event the limit is $2.5 million. But in addition to recovering for such accidental "loss" or damage to the covered property, the insured also may recover up to $3.3 million in "soft costs" that result from that damage and are incurred during the period of delay in completing the project.

Defendant finds it significant that the Limits of Insurance provision contains the following cautionary language: "[i]f a title for a Limit of Insurance appears in quotations in the Declarations, that limit has a special meaning and may act to reduce or eliminate

9

coverage under some circumstances." (*Id.* at 22). Yet Earth Movement Limit of Insurance and Soft Costs both appear in quotation marks in the Declarations, and nothing in the body of the Policy explains how these two provisions interact. Thus, it is not at all clear that the Earth Movement Limit of Insurance is intended to include amounts for soft costs. The Policy contains no language to that effect and, as noted, treats soft costs as a wholly separate concept. At best, there is ambiguity as to the intention of the parties regarding the scope of this type of coverage. Under such circumstances, the provision must be construed against Defendant. *National Union Fire Ins. Co. of Pittsburgh*, 158 Ill.2d at 122, 632 N.E.2d at 1042.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Partial Summary Judgment [Doc. 27] is granted.

ENTER:

Dated: December 13, 2011

*Sheila Finnegan*
SHEILA FINNEGAN
United States Magistrate Judge