UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ONE PLACE CONDOMINIUM LLC, <br> THE SOUTH LOOP SHOPS LLC, <br> SOUTHBLOCK DEVELOPMENT LLC, <br> C & K PARTNERSHIP, and <br> SOUTHBLOCK MANAGEMENT, INC., <br><br> Plaintiffs, <br><br> vs. <br><br><br> TRAVELERS PROPERTY CASUALTY <br> COMPANY OF AMERICA, <br><br> Defendant. | Case No. 1:11-cv-02520 <br><br><br><br> Honorable Sheila M. Finnegan |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 56(a) and Local Rule 56.1, Plaintiffs, One Place Condominium LLC, The South Loop Shops LLC, Southblock Development LLC, C & K Partnership, and Southblock Management, Inc. (collectively "Plaintiffs" or "One Place"), move this Court to enter partial summary judgment in their favor and against Defendant, Travelers Property Casualty Company of America ("Travelers"), on the following issues: (1) under the "Reinstatement of Limit of Loss" provision in the Policy, payments made by Travelers do not reduce the limits available under the Policy to pay Plaintiffs; (2) the Policy's definition of "earth movement" applies only to natural, not man-made earth movement; and (3) the "Earth Movement Annual Aggregate Limit of Insurance" provision does not apply to limit the amount of insurance available for earth movement.

## I.  INTRODUCTION

This is a breach of contract and insurance coverage dispute arising from a Builders' Risk Policy Plaintiffs purchased from Travelers. Plaintiffs are the owners and developers of a mixed commercial use building in Chicago located at 1 E. 8th Street. To provide protection for project risks during construction, Plaintiffs purchased an "all risk" policy with "basic" limits of $33 million ("the Policy").

Not only does this Policy provide broad coverage to the insured by covering accidental loss or damage to covered property unless limited or excluded, but it is also, to say the least, uniquely written. This unique policy language necessitates this Court's interpretation of various provisions. This Court previously resolved one of the issues arising from the Policy language via an order finding that the earth movement limit of $2.5 million does not include the $3.3 million of "soft costs" coverage provided by the Policy. (SOMF at ¶ 9). Plaintiffs again respectfully request that this Court issue declarations regarding the following Policy language: (1) the

1

"Reinstatement of the Limit After Loss" provision; (2) the "earth movement" definition in the Policy; and (3) the "Earth Movement Annual Aggregate Language". Resolution of these issues will assist in providing clarity for trial.

## II. FACTS[1]

In this case, there is no dispute that Plaintiffs experienced a loss covered by the Policy. (SOMF at ¶ 5). Travelers has paid a portion of Plaintiffs' claims. (SOMF at ¶ 6). The Policy contains certain limits listed in the Declarations, including limits for basic, soft costs, and earth movement. Coverage Extensions and Additional Coverage provisions are not controlled by these limits. (SOMF at ¶ 10). Plaintiffs have made claims under the Policy for: (a) accidental loss or damage to covered property; (b) soft costs; (c) expenses to reduce the amount of loss; and (d) expediting costs. (SOMF at ¶ 7).

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 397 (7th Cir. 2012); *One Place Condo., LLC v. Travelers Property Cas. Co. of America*, No. 11 C 2520, 2011 WL 6182363, at *3 (N.D. Ill. Dec. 13, 2011). The existence of some disputed fact alone is insufficient to defeat an otherwise valid motion for summary judgment, as the dispute must concern a fact that is critical to the determination of the suit under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Perrywatson v. United Airlines, Inc.*, 916 F. Supp. 2d

---

[1] A detailed statement of all material facts, including specific references to supporting materials, is contained in the concurrently filed Plaintiffs' Statement of Material Facts ("SOMF").

2

866, 2013 WL 69126, at *3 (N.D. Ill. 2013) *aff'd sub nom Perrywatson v. United Air Lines, Inc.,* 13-1247, 2013 WL 4294731 (7th Cir. Aug. 16, 2013).

After the movant makes a proper motion for summary judgment, the nonmovant must respond by positing specific facts that demonstrate a genuine issue of material fact. Although the nonmovant's evidence is to be awarded all reasonable inferences, this Court requires that the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Perrywatson*, 2013 WL 69126 at *3.

Questions of contract interpretation, including a determination of whether an ambiguity exists in an insurance policy, constitute questions of law that are ripe for disposition on a motion for summary judgment. *Roman Catholic Diocese v. Maryland Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998) ("Illinois law . . . treats the interpretation of an insurance policy and the respective rights and obligations of the insurer and the insured as questions of law that the court may resolve summarily").

## IV.  ARGUMENT

Travelers issued an "all risk" policy to One Place. (SOMF ¶ 3). "All risk" insurance policies protect the insured in cases where the loss or damage to property is difficult or impossible to explain. The insured's burden under an all risk policy is limited. The insured need only show that a fortuitous loss occurred and that there was a loss or damage to covered property. The insured need not prove the cause of the loss or damage. Thus, the benefit of paying for an all risk policy. The burden then shifts to the insurer to prove an express exclusion or limitation to coverage applies, as well as the dollar amount that should be excluded from coverage. Order [Doc. 41] at p. 7; *Gulino v. Econ. Fire & Cas. Co.*, 2012 IL App (1st) 102429, ¶16, 971 N.E.2d 522, 527; *Bd. of Educ. of Maine Twp. High Sch. Dist. 207 v. Int'l Ins. Co.*, 292

3

Ill. App. 3d 14, 17, 684 N.E.2d 978, 981 (1997); *McGrath v. American Fam. Mut. Ins. Co.,* 2008 WL 4531373 (N.D. Ill. 2008).

### A. The "Reinstatement Of Limit After Loss" Provision Maintains Limits of Insurance.

The Policy contains a provision entitled "Reinstatement of Limit After Loss" that expressly states that the limits of insurance will not be reduced by the payment of any claim. In other words, when Travelers pays a claim, then any coverage which is subject to a limit is again replenished up to the amount of the limit. This provision reads as follows:

> "8. Reinstatement Of Limit After Loss
>
> The Limit of Insurance will not be reduced by the payment of any claim except for total 'loss' of a building or structure, in which event we will refund the unearned premium on that building or structure." (SOMF ¶ 12).

The word "claim" is not defined in the Policy. Per the Merriam-Webster Dictionary, "claim" is defined as "to ask for especially as a right." Merriam-Webster.com, dictionary: "claim," http://www.merriam-webster.com/dictionary/claim?show=0&t=1377800506 (last visited August 29, 2013). There is nothing in the "Reinstatement of Limit After Loss" provision limiting the number of claims that will be paid by Travelers. Instead, the "Reinstatement of Limit After Loss" provision simply states that the limit of insurance will not be reduced by the payment of "any claim." Accordingly, when Travelers pays money to its insured under a particular limit set out in the Policy, that limit will not be reduced, and it is again available for further payment for "any claim."

Setting aside Plaintiffs' claims for soft costs, expenses to reduce amount of loss, and expediting costs (as this Court has held that soft costs are not limited by earth movement, and Travelers has conceded and this Court has noted, that additional coverages such as expenses to

4

reduce the amount of loss and expediting costs also are not limited by earth movement)[2], Travelers argues that the remainder of Plaintiffs' loss is subject to an earth movement limit of $2.5 million. However, according to the aforementioned language in the Policy, the amount paid by Travelers does not reduce the limit. So, the full limits are available after any payment made by Travelers. Thus, the amount of money Travelers claims it has paid does not reduce the limit available.

In short, even if the earth movement language applies,[3] the amount Travelers has paid thus far, does not reduce the limit of $2.5 million available to pay Plaintiffs. If Travelers wanted to limit its obligation, then it could have used different language such as per loss or per occurrence or per year. It did not. *See, e.g., Ansvar America Ins. Co. v. Hallberg*, 209 Ill. App. 2d 206, 211, 568 N.E.2d 77, 77-80 (1st Dist. 1991) ("If Ansvar had wanted the notice provision to act as a condition precedent to its obligation to provide coverage, it could have made it more explicit in substance and form."). Accordingly, Plaintiffs request this Court to declare and to find that per the "Reinstatement of Limit of Loss" provision, payments made by Travelers do not reduce the limits available under the Policy.

### B. The Policy's "Earth Movement" Definition Applies Only to Natural, Not Man-Made Events.

Plaintiffs seek a ruling that the "earth movement" definition in the Policy applies only to earth movement due to natural causes, and not man-made causes.[4] Language purporting to describe what "earth movement" is within the confines of the Policy are contained in neither the coverage nor the exclusion sections of the Policy. Instead, other than on the Declarations Page

---

[2] *See* Travelers Response to Plaintiffs' Motion for Partial Summary Judgment, conceding that additional coverage (such as expenses to reduce loss and expediting expenses) are not subject to limits and this Court's order finding that soft costs are not limited by earth movement language and denoting that additional coverage is not controlled by the limits. [Docs. 31 and 41].
[3] It is Plaintiffs' position that earth movement language does not apply to the facts of the case and Plaintiffs reserve their rights.
[4] Plaintiffs reserve the right to argue that the earth movement limitation does not apply to the present action based on the facts even if the Court finds this language does apply to man-made events.

5

setting out limits and deductibles, "earth movement" is not discussed until the Definitions section of the Policy, which provides in relevant part:

> "7. 'Earth movement' means any movement of the earth (other than "sinkhole collapse"), including but not limited to:
>
>    a. Earthquake;
>    b. Landslide;
>    c. Earth sinking, rising or shifting;
>    d. Volcanic eruption, explosion or effusion.
>
> 8. 'Earth Movement Annual Aggregate Limit of Insurance' means the most we will pay for all covered 'earth movement' occurrences in any one policy year.
>
>    Each policy year:
>
>    a. Begins with the inception date or anniversary date of this policy, and
>    b. Ends at the next anniversary date or the expiration date of this policy.
>
> 9. 'Earth Movement Deductible' means the Deductible applicable in any one occurrence of 'loss' from 'earth movement.'
>
> 10. 'Earth Movement Limit of Insurance' means the most we will pay for 'loss' in any one occurrence caused directly or indirectly by 'earth movement,' regardless of any other cause or event that contributes concurrently or in any sequence to the 'loss.'
>
> But if 'loss' by fire, explosion or 'volcanic action' results from 'earth movement,' the "Earth Movement Limit of Insurance" will not apply to the resulting 'loss.' Instead, we will pay up to the applicable Limit of insurance shown in the Declarations that would otherwise apply to "loss" by fire, explosion or 'volcanic action.' We will also pay up to such applicable Limit of Insurances for 'loss' by building glass breakage resulting from volcanic eruption, explosion or effusion.
>
> All 'earth movement' that occurs within any 168 – hour period will constitute a single occurrence. The expiration of this policy will not reduce the 168 – hour period.
>
> Any payment under the 'Earth Movement Limit of Insurance' will not increase the applicable Limit of Insurance shown elsewhere in this policy." (SOMF ¶ 10).

The rules governing the interpretation and construction of insurance policies are well-established. In summary, the terms of an insurance policy must be given their plain and ordinary

6

meaning; but, upon finding an ambiguity, this Court must construe the policy against the insurer and in favor of the insured. *Nautilus Ins. Co. v. Vuk Builders, Inc.*, 406 F. Supp. 2d 899, 903 (N.D. Ill. 2005). An ambiguity arises when a reasonable person could construe the policy provision in more than one way. *Id.*; *Roman Catholic Diocese*, 139 F.3d at 565. Accordingly, this Court must interpret an ambiguous provision seeking to limit or to exclude coverage narrowly and against the insurer. Order [Doc. 41]; *Nautilus Ins. Co.*, 406 F. Supp. 2d at 903; *Oakley Transport, Inc. v. Zurich Ins. Co.*, 271 Ill. App. 3d 716, 722, 648 N.E.2d 1099, 1104 (1st Dist. 1995). The rationale behind this familiar rule is two-fold: (1) the intent of an insured in purchasing an insurance policy is to obtain coverage and, therefore, any ambiguity jeopardizing such coverage should be construed consistent with the insured's intent; and (2) the insurer drafted the policy and could have written the ambiguous provision clearly and specifically. Order [Doc. 41]; Elson *v. State Farm Fire & Cas. Co.*, 295 Ill. App. 3d 1, 11, 691 N.E.2d 807, 814 (1998).

 1. **Case Law Supports The Finding That The Definition Of "Earth Movement" Applies Only To Natural, Not Man-Made Causes.**

Courts in Illinois have held that similar earth movement provisions are ambiguous and must be interpreted in favor of coverage. *See generally Nautilus Ins. Co.*, 406 F. Supp. 2d at 904-05; *Mattis v. State Farm Fire & Cas. Co.*, 118 Ill. App. 3d 612, 617, 454 N.E.2d 1156, 1160 (1983). Furthermore, numerous courts have found that man-made causes are not subject to earth movement provisions. *See, e.g., Peters Tp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 38 (3d Cir. 1987) (applying Pennsylvania law) (extraction of coal is "non-natural" and thus not excluded); *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 908 N.E.2d 875,

7

877 (N.Y. 2009) (earth movement exclusions do not apply to losses caused by excavation, i.e. "intentional earth removal")[5].

The Policy's definition of "earth movement" is ambiguous. The examples given for "earth movement" – earthquake; landslide; earth sinking, rising or shifting; and volcanic eruption, explosion or effusion – define the *type* of earth movement, not the *cause*. The cause is ambiguous. The examples could be interpreted to limit coverage for natural causes. For example, earth sinking, rising, or shifting could be attributed to earthquakes. On the other hand, the same examples could be interpreted to limit coverage for man-made events. For instance, negligent excavation could also result in earth sinking, rising or shifting. Without further definition of the causes of earth movement, the definition does not clearly stand for one or the other. Because either interpretation is reasonable, the definition of "earth movement" is ambiguous. This means that Plaintiffs' reasonable interpretation controls: the definition covers only earth movement due to natural causes.

In *Nautilus Ins. Co.*, the district court found ambiguity in a strikingly similar earth movement provision. There, an allegedly negligent excavation caused property to shift, erode and suffer structural damage. The relevant commercial general liability policy contained an exclusion providing:

> "This insurance does not apply to 'bodily injury,' 'property damage,' 'personal and advertising injury' or medical payments caused by, resulting from, contributed to or aggravated by the "subsidence of land."

\* \* \* \*

---

[5]Cases providing that earth movement exclusions encompass man-made causes, such as excavation work, do so because the relevant policy typically excludes both man-made *and* natural causes, a characteristic not present in the instant policy. *See Federal Ins. Co. v. Olawuni*, 539 F. Supp. 2d 63, 67-68 (D.D.C. 2008) (policy excluding earth movement "whether caused by or resulting from natural forces or contributed to, in any way, by any work or operations performed by you or any contractor or subcontractor").

8

> 'Subsidence' shall mean earth movement, including but not limited to landslide, mud flow, earth sinking, rising or shifting." *Nautilus Ins. Co.*, 406 F. Supp. 2d at 904.

The district court found the provision ambiguous and accordingly interpreted the policy in favor of coverage; the exclusion only applying to natural causes. *Id.* at 904-05. An ambiguity existed for two reasons. First, the examples given – landslide, mud flow, earth sinking, rising or shifting – could be attributable to man-made *or* natural causes. Second, the insurer failed to specifically exclude man-made causes or insert a "regardless of cause" provision. *Id.* This ambiguity led the district court to interpret the provision as applying only to natural causes, and the district court accordingly found coverage *because negligent excavation is a man-made cause. Id.* at 905.

*Nautilus Ins. Co.* is directly applicable to the instant case and demonstrates the Policy's inherent ambiguity. Both policies listed "landslide" and "earth sinking, rising or shifting" as examples of earth movement. Both insurers failed to insert an express exclusion for man-made causes into the "earth movement" definition. Accordingly, under *Nautilus Insurance Co.*, the Travelers Policy is ambiguous. This Court must therefore interpret the "earth movement" definition as applying only applying to natural causes. *See Willmar Dev., LLC v. Ill. Nat. Ins. Co.*, 726 F. Supp. 2d 1280, 1288-89 (D. Or. 2010) (*aff'd*, 464 Fed. Appx. 594 (9th Cir. 2011)) (citing *Nautilus* and finding a similar earth movement exclusion ambiguous and limiting application to natural causes); *State Farm Fire & Cas. Co. v. Castillo*, 829 So.2d 242 (Fla. 3d DCA 2002). *But see Sentinel Assoc. v. Am. Mfrs. Mut. Ins. Co.,* 804 F. Supp. 815, 818 (E.D. Va. 1992) (finding earth movement provision ambiguous and only applicable to natural causes despite provision including "regardless of any other cause or event" language); *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 673-74 (Nev. 2011).

9

The *Nautilus Ins. Co.* holding is not unique, as an abundance of foreign jurisdictions also have provided that similar or identical earth movement provisions only exclude earth movement from natural causes. *Fayad v. Clarendon Nat. Ins. Co.*, 899 So.2d 1082, 1087 (Fla. 2005) (an "overwhelming majority of courts" provide that such exclusions[6] only apply to natural events); *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 9 (W. Va. 1998) (the "majority of courts that have considered earth movement exclusions[7] have found them to be ambiguous"); *Wis. Builders, Inc. v. Gen. Ins. Co. of Am.*, 221 N.W.2d 832, 837 (Wis. 1974) ("[t]he majority of courts which have considered this particular exclusion[8] have found it to be ambiguous"); *see also Winters v. Charter Oak Fire Ins. Co.,* 4 F.Supp.2d 1288, 1291 (D.N.M.1998) (construing earth movement exclusion to include only naturally occurring events); *Wyatt v. Nw. Mut. Ins. Co.,* 304 F. Supp. 781, 783 (D. Minn. 1969) ("[c]ertainly not all earth movements, or at least those where some human action causes such are included in the [earth movement] exclusion"); *Bly v. Auto Owners Ins. Co.,* 437 So.2d 495, 497 (Ala.1983) (exclusion[9] was ambiguous); *Powell*, 252 P.3d at 673-74 (earth movement exception[10] is ambiguous and only applies to naturally occurring events); *Ariston Airline & Catering Co. v. Forbes,* 511 A.2d 1278, 1284 (N.J. Super. Ct. Law. Div. 1986) (exclusion was "far from clear" and must be read as providing coverage and only applicable to natural events); *United Nuclear Corp. v. Allendale Mut. Ins.,* 709 P.2d 649, 652-53

---

[6]Providing "We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. . . . Earth Movement, meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by fire; or explosion . . . ensues." *Id.* at 1084 (internal numbering omitted).

[7]Defining earth movement as "including, but not limited to, earthquake, volcanic eruption, landslide, subsidence, mud flow, sinkhole, erosion, or the sinking, rising, shifting, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water." *Id.* at 8.

[8]Excluding "Loss caused by, resulting from, contributed to or aggravated by any of the following . . .earth movement, including but not limited to earthquake, volcanic eruption, landslide, mudflow, earth sinking, earth rising or shifting." *Id.* at 834.

[9]"This policy does not insure against loss: . . . caused by, resulting from, contributed to or aggravated by any earth movement, including but not limited to earthquake, volcanic eruption, landslide, mudflow, earth sinking, rising or shifting." *Id.* at 496.

[10]"We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. . . . Earth movement, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide, mine subsidence; mudflow; earth sinking, rising or shifting." *Id.* at 670.

(N.M. 1985) (exclusion[11] applies only to naturally occurring phenomena); *Steele v. Statesman Ins. Co.,* 607 A.2d 742, 743 (Pa. 1992) (finding exclusion[12] ambiguous and only applicable to natural events).

Plaintiffs anticipate that Travelers will argue the "earth movement" definition includes natural as well as man-made earth movement, based on the "regardless of any other cause or event that contributes concurrently or in any sequence to the loss" language in the "Earth Movement Limit of Insurance" provision.[13] However, the cases relied upon by Travelers in its Motion for Partial Summary Judgment are distinguishable, as in each case the "anti-concurrent cause" language was the lead-in language to the exclusion at issue. Here, there is no anti-concurrent cause language in the "earth movement" definition. Nor is there "anti-concurrent cause" language in the "Earth Movement Annual Aggregate Limit of Insurance" provision, further adding to the ambiguity of the "earth movement" definition. It is the "earth movement" definition that must have this language, as the "Earth Movement Limit of Insurance" provision does not apply unless the event at issue comes within the definition of "earth movement" in the first place. Thus, if it intended its definition of "earth movement" to encompass both natural and man-made earth movement, then Travelers should have drafted the definition expressly to say so. *See Bentoria Holdings, Inc. v. Travelers Indemn. Co.*, 20 N.Y.3d 65, 68, 980 N.E.2d 504, 505 (2012) (expressly excluding earth movement "due to man-made or other artificial causes.") Or, it should have included "anti-concurrent cause" language in the definition. *See Fayad*, 899 So. 2d at 1089 ("[W]e conclude that blasting is not encompassed within the earth movement

---

[11]"[t]here shall be no liability for loss or damage caused by or resulting from flood, earthquake, landslide, subsidence or any other earth movement." *Id.* at 651.
[12]"We do not cover loss resulting directly or indirectly from . . . Earth Movement. Meaning any loss caused by, resulting from, contributed to or aggravated by earthquake; landslide; mudflow; earth sinking, rising or shifting; volcanic eruption meaning the eruption, explosion or effusion of a volcano . . . " *Id.* at 742.
[13]Travelers raised this argument in its recently filed Motion for Partial Summary Judgment [Doc. 112], in which it asks this Court to "rule that the earth movement limit of $2.5 million applies to Plaintiffs' claims."

11

exclusion. We rely not only on the actual language used in Clarendon's definition of earth movement, but also on the fact that Clarendon chose not to utilize language specifically excluding damage resulting from earth movement regardless of its cause.").

### 2. The Doctrines Of *Ejusdem Generis* And *Noscitar a Sociis* Lead To The Conclusion That The "Earth Movement" Definition Applies Only To Natural Events.

Further support that the definition of "earth movement" is limited to earth movement from natural causes is provided in the maxim *ejusdem generis*, which provides that where general words follow an enumeration of specific words, the general words are construed as applying to the same kind or class as those that are specifically mentioned, and the corollary maxim *noscitar a sociis*, which provides that the meaning of an unclear word should be determined by the words immediately surrounding it. *Black's Law Dictionary*, 556, 1087 (8th ed. 2004). The doctrines are similar in nature, and courts routinely employ *ejusdem generis* and *noscitar a sociis* to limit the application of earth movement to natural events rather than man-made events. *See, e.g., Gullett v. St. Paul Fire & Marine Ins. Co.*, 446 F.2d 1100, 1103-04 (7th Cir. 1971) (applying Illinois law) (under *ejusdem generis*, large rocks falling onto a building do not fall into the same category as "earthquake, volcanic eruption, landslide or other earth movement," and as such do not constitute earth movement); *Nautilus Ins. Co.*, 406 F. Supp. 2d at 904; *United Nuclear Corp.*, 709 P.2d at 653; *Forbes*, 511 A.3d at 482 ("The words 'earth movement' must be interpreted as referring to natural phenomenon akin to earthquakes, landslides, mudflows, earth sinkings, and earth risings or shiftings."); *Sentinel* Associates, 804 F. Supp. at 818; *Steele*, 607 A.2d at 743; *Rankin ex rel. Rankin v. Generali – U.S. Branch*, 986 S.W.2d 237, 239 (Tenn. Ct. App. 1998). Courts have similarly found that the term "shrinking rising or shifting" construed with the other listed events means it refers to natural, not man-made,

events. *Nautilus Ins. Co.*, 406 F. Supp. 2d at 904 (employing *ejusdem generis* and concluding that provision defining earth movement as including "earth sinking, rising or shifting" only applies to natural causes); *Mattis*, 454 N.E.2d at 1160.

Of particular note in this regard is *Mattis*, in which an Illinois appellate court employed the *ejusdem generis* doctrine to limit the application of an earth movement exclusion. There, the insured's residence suffered ground level and basement damage resulting at least in part from defective construction and excavation. The insured's all risk homeowner's policy provided that: "This policy does not insure against loss: . . . . Caused by, resulting from, contributed to or aggravated by any earth movement, including but not limited to earthquake, volcanic eruption, landslide, mudflow, earth sinking, rising or shifting . . . ." 118 Ill.App.3d at 617. The court held that the earth movement exclusion did not constitute a sufficient basis for a denial of coverage. The court initially remarked that most courts consider these exclusions ambiguous, and later reasoned that the exclusion only applied to causes in the same class as those listed. Damage resulting from a construction defect was not in the same class as damage resulting from an earthquake or landslide.

The *Mattis* scenario is directly analogous to the instant matter. The *Mattis* policy defined "earth movement" as "including but not limited to earthquake, volcanic, eruption, landslide, mudflow, earth sinking, rising or shifting." The Policy here defines earth movement" as "including but not limited to" "Earthquake," "Landslide," "Earth sinking, rising or shifting," and "Volcanic eruption, explosion or effusion."

In sum, the overwhelming weight of authority in this Country, including Illinois, supports Plaintiffs' position that the Policy's definition of "earth movement" applies only to natural, not

13

man-made earth movement, and even then only causes in the same class as those listed. Plaintiffs therefore request this Court to find and to declare the same.

### C. The "Earth Movement Aggregate Limit of Insurance" Is Ambiguous and Does Not Limit Coverage.

This Court must interpret conflicting policy provisions in favor of coverage. When two contractual provisions conflict, both provisions are considered ambiguous and must be interpreted against the insurer and in favor of the insured. *Nautilus Ins. Co.*, 406 F. Supp. 2d at 903; *Hacker v. Shelter Ins. Co.*, 388 Ill. App. 3d 386, 396, 902 N.E.2d 188, 196 (5th Dist. 2009); *Nat'l Discount Shoes, Inc. v. Royal Globe Ins. Co.*, 99 Ill. App. 3d 54, 60, 424 N.E.2d 1166, 1171 (1st Dist. 1981) ("in case of ambiguity or any inconsistent or conflicting provisions, [insurance contracts] must be construed in favor of granting coverage to the insured").

The "Earth Movement Annual Aggregate Limit of Insurance" provision states it is "the most we will pay for all covered 'earth movement' occurrences in any one policy year." However, this provision does not state it is the most that will be paid for other covered loss or damage. Just for "earth movement." This definition leaves open the possibility that if other covered occurrences happen outside of earth movement, then that payment will also be owed by Travelers. Thus, even if the loss was caused in part by earth movement, this provision only limits the aggregate payment to $2.5 million for "earth movement," while *leaving the door open* for payment of other events or causes. Contrast this provision with the "Earth Movement Limit of Insurance" provision, which seeks to *close* the door for other events by using the "regardless of any other cause or event" language. Hence, a contradiction, and an ambiguity, exists that must be interpreted in favor of the insured.

Moreover, the "Reinstatement of Limit After Loss" provision also creates an ambiguity, in that it provides that limits will not be reduced by payment. If the limits are not reduced by

payment, then how is it that an Annual Aggregate comes in to play? It cannot. The "Reinstatement of Limit After Loss" provision does not say, for instance, "except for any aggregates," that may apply or "except as otherwise set forth in the policy." Instead, it is simply plunked into the middle of the Policy and says that payment does not reduce limits. At minimum, there is an ambiguity which must be construed in favor of Plaintiffs and against Travelers. Accordingly, Plaintiffs request this Court to find and declare that the "Earth Movement Annual Aggregate Limit of Insurance" provision does not apply to limit the amount of insurance available for earth movement.

## V. CONCLUSION

The Policy is nothing, if not unique. The 'Reinstatement of Limit After Loss" provision states that policy limits are not reduced after payment. There is no limitation or exception to this reinstatement mandate in the Policy. Next, the case law is legion in concluding that the "earth movement" definition, similar to that in the Policy, applies only to earth movement from natural, and not man-made events and even then only to the same class as those listed items. Finally, the "Earth Movement Aggregate Limit of Insurance" language is ambiguous in and of its own definition, and particularly in light of the "Reinstatement of Limit After Loss" language. Accordingly, Plaintiffs respectfully request that this Court grant partial summary judgment in their favor and against Travelers, finding and declaring that: (1) under the "Reinstatement of Limit After Loss" provision, the limits are not reduced after payment and thus the earth movement limit (or any other limits) is not reduced by any of Travelers' payments; (2) the "earth movement" definition applies only to natural and not man-made earth movement and even then only to the same categories as the items listed; and (3) the "Earth Movement Annual Aggregate Limit of Insurance" provision is ambiguous and thus it does not apply to limit the amount of insurance available for earth movement.

15

Dated: August 30, 2013.

                                      ONE PLACE CONDOMINIUM LLC,
                                      THE SOUTH LOOP SHOPS LLC,
                                      SOUTHBLOCK DEVELOPMENT LLC,
                                      C & K PARTNERSHIP, AND
                                      SOUTHBLOCK MANAGEMENT, INC.

By:    <u>/s/Katherine Smith Dedrick</u>
        Katherine Smith Dedrick, Esq.
        Illinois Bar No. 6185314
        kdedrick@childresslawyers.com
        Michael W. Duffy, Esq.
        Illinois Bar No.6180182
        mduffy@childresslawyers.com
        Edward Eshoo, Esq.
        Illinois Bar No.6190179
        eeshoo@childresslawyers.com
        CHILDRESS DUFFY, LTD.
        500 North Dearborn Street
        Suite 1200
        Chicago, Illinois 60654
        Tel: (312) 494-0200
        Fax: (312) 494-0202
        *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

  I, Katherine Smith Dedrick, the undersigned attorney, hereby certify that a true and correct copy of the foregoing Motion for Partial Summary Judgment by causing a true and correct copy of same to be served via Electronic Mail and U.S. Mail before 5:00 p.m. on this 30th day of August, 2013.

Jonathan Kevin Barger, Esq.
Patrick Michael Sever, Esq.
Kenneth Clark Schirle, Esq.
James F. Smith, Esq.
BUTLER PAPPAS WEIHMULLER KATZ AND CRAIG LLP
115 South LaSalle Street, Suite 3200
Chicago, Illinois 60603
cschirle@butlerpappas.com
jbarger@butlerpappas.com
msever@butlerpappas.com
jsmith@butlerpappas.com,
***Counsel for Defendant***

            By: /s/Katherine Smith Dedrick
               Katherine Smith Dedrick, Esq.
               Illinois Bar No. 6185314
               kdedrick@childresslawyers.com
               Michael W. Duffy, Esq.
               Illinois Bar No.6180182
               mduffy@childresslawyers.com
               Edward Eshoo, Esq.
               Illinois Bar No.6190179
               eeshoo@childresslawyers.com
               CHILDRESS DUFFY, LTD.
               500 North Dearborn Street
               Suite 1200
               Chicago, Illinois 60654
               Tel: (312) 494-0200
               Fax: (312) 494-0202
               *Attorneys for Plaintiffs*